## HENRY RICHTER v. PHOENIX BLDG. & LOAN CO.

1. WHERE BOTH PARTIES MOVE FOR VERDICT, COURT OCCUPIES STATUS OF JURY.

Where both the plaintiff and the defendant, at the close of the evidence, respectively move for a verdict in their favor, the court thereupon assumes or occupies the status of a jury.

2. CONTRACT IS NOT ONE COMPOUNDING A FELONY WHEN PARTY INJURED DOES NOT AGREE TO REFRAIN FROM PROSECUTING, ETC.

A contract is not illegal on the ground that its purpose is to compound a felony unless it appears that there was an agreement on the part of the party injured not to institute a criminal prosecution. The mere hope that it may have such result is not sufficient.

3. CRIMINAL AND CIVIL LIABILITY OF EMBEZZLER OF FUNDS.

A secretary of a building and loan association who defaults with the association's money incurs both a criminal and civil liability,—the former to the state, and the latter to the association.

4. CONTRACT TO CONTRIBUTE MONEY TO SETTLE DEFALCATIONS NOT ILLEGAL, WHEN.

A contract between individuals, some of whom are stockholders and directors of a building and loan association, under which they agree to raise sufficient funds among themselves to make up the defalcations of the secretary, is not illegal as being a contract to compound a felony, in the absence of a promise or agreement on the part of the association not to institute or cause to be instituted criminal proceedings against such secretary in consideration of its receiving such money; and where one of the parties to the contract, in execution of his part of the agreement, voluntarily cancels an indebtedness due him from the association, and the amount thereof is credited to the amount of the secretary's shortage, he cannot thereafter repudiate such cancellation and recover the amount of such former indebtedness from the association.

5. EXECUTED ILLEGAL CONTRACT NOT SET ASIDE BY COURTS.

Where an illegal contract, such as one compounding a felony, has been executed by the parties, the court will not assist either party in recovering back what he has parted with, but will leave all of them where it finds them.

ERROR to Lucas common pleas court.

**J. P. Manton** and **J. P. Hanley,** for plaintiff in error:

May the illegal purpose of a contract be shown? 9 Cyc. 465 and cases cited; *Kusworm v. Hess,* 7 Dec. Re. 224 (1 Bull. 315); *Burns v. Seep,* 6 Dec. Re. 847 (8 Rec. 425; 4 Bull. 1067); *Spurgeon v. Mc-Elwain,* 6 Ohio 442 [27 Am. Dec. 266]; *Whetstone v. Bank,* 9 Ala. 875; *Ralston v. Boady,* 20 Ga. 449; *Reynolds v. Nichols,* 12 Iowa 398; 9 Cyc. 562; *Brogden v. Mariott,* 3 Bing. (N. C.) 88; *Robertson v. Robinson,* 65 Ala. 610 [39 Am. Rep. 17]; *Buffandeau v. Brooks,* 28

Cal. 641; *Clark* v. *Pomeroy*, 86 Mass. 534; *Nellis* v. *Clark*, 20 Wend. 24.

When the promisor knows of the illegal purpose, promise void. *Goodrich* v. *Tenney*, 144 Ill. 422 [33 N. E. Rep. 44; 19 L. R. A. 371; 36 Am. St. Rep. 459]; *Tatum* v. *Kelley*, 25 Ark. 209 [94 Am. Dec. 717]; *Buck* v. *Bank*, 27 Mich. 293 [15 Am. Rep. 189]; *Cannon* v. *Brice*, 3 Barn. & Ald. 179; *McKinnel* v. *Robinson*, 7 L. J. Exch. 149; *Viser* v. *Bertrand*, 14 Ark. 267; *Emerson* v. *Townsend*, 73 Md. 224 [20 Atl. Rep. 984]; *White* v. *Buss*, 57 Mass. (3 Cush.) 448; *Raymond* v. *Leavitt*, 46 Mich. 447 [9 N. W. 525; 41 Am. Rep. 170]; *Hall* v. *Costello*, 48 N. H. 176; *Cutler* v. *Welsh*, 43 N. H. 497; *Staples* v. *Gould*, 9 N. Y. 520; *Critcher* v. *Holloway*, 64 N. C. 526; *Spurgeon* v. *McElwain*, 6 Ohio 442 [27 Am. Dec. 266]; *Kusworm* v. *Hess*, 7 Dec. Re. 224 (1 Bull. 315); *Burns* v. *Seep*, 6 Dec. Re. 847 (8 Rec. 425; 4 Bull. 1067); *Standard Furniture Co.* v. *Van Alstine*, 22 Wash. 670 [62 Pac. Rep. 145; 51 L. R. A. 889; 79 Am. St. Rep. 960].

Courts will not give recognition to a promise or agreement tainted with illegality. 9 Cyc. 481, 500; *Weber* v. *Shay*, 56 Ohio St. 116 [46 N. E. Rep. 377; 37 L. R. A. 230; 60 Am. St. Rep. 743]; *Plumer* v. *Smith*, 5 N. H. 553 [22 Am. Dec. 478]; *Central Ohio Salt Co.* v. *Guthrie*, 35 Ohio St. 666; *Schofield* v. *Railway*, 43 Ohio St. 571 [3 N. E. Rep. 907; 54 Am. Rep. 846]; *Crawford* v. *Wick*, 18 Ohio St. 190 [98 Am. Dec. 103].

Parties in *pari delicto*. *Goodrich* v. *Tenney*, 144 Ill. 422 [33 N. E. Rep. 44; 19 L. R. A. 371; 36 Am. St. Rep. 459]; *Brown* v. *Bank*, 137 Ind. 655 [37 N. E. Rep. 158; 24 L. R. A. 206]; *Insurance Co.* v. *Hull*, 51 Ohio St. 270 [37 N. E. Rep. 1116; 25 L. R. A. 37; 46 Am. St. Rep. 571]; *Reed* v. *Johnson*, 27 Wash. 42 [67 Pac. Rep. 381]; 57 L. R. A. 404.

Promises, agreements and acts connected with illegal transactions are void. *Nash* v. *Monheimer*, 20 Ill. 215; *Armstrong* v. *Toler*, 24 U. S. (11 Wheat.) 258 [6 L. Ed. 468]; *Barton* v. *Plankroad Co.* 17 Barb. 397; *Rose* v. *Truax*, 21 Barb. 361; *Woodworth* v. *Bennett*, 43 N. Y. 273 [3 Am. Rep. 706]; *Jones* v. *Surprise*, 64 N. H. 243 [9 Atl. Rep. 384]; *Buckingham* v. *Fitch*, 18 Mo. App. 91; *Webster* v. *Sturges*, 7 Ill. App. 560; *Sturges* v. *Bush*, 5 Day 452; *Henderson* v. *Palmer*, 71 Ill. 579 [22 Am. Rep. 117]; *Comstock* v. *Draper*, 1 Mich. 481 [53 Am. Dec. 78]; Beach, Mod. Contr. Sec. 1422; Wharton, Contracts 339; *Luce* v. *Foster*, 42 Neb. 818 [60 N. W. Rep. 1027]; *Tracy* v. *Deatrick*, 6 Circ.

Richter v. Building & L. Co.

Dec. 427 (10 R. 111) ; *Tracy* v. *Dietrich,* 56 Ohio St. 770 [49 N. E. Rep. 1118].

A party in *pari delicto* may recover what he parted with under illegal contract, if he does not base his right on the illegal contract. *Insurance Co.* v. *Hull,* 51 Ohio St. 270 [37 N. E. Rep. 1116; 25 L. R. A. 37; 46 Am. St. Rep. 571] ; *Manhattan Life Ins. Co.* v. *Burke,* 69 Ohio St. 294 [70 N. E. Rep. 74; 100 Am. St. Rep. 666] ; *Ware* v. *Curry,* 67 Ala. 274; *Den* v. *Shotwell,* 23 N. J. Law 465; *Martin* v. *Hodge,* 47 Ark. 378 [1 S. W. Rep. 694; 58 Am. Rep. 763] ; *Allebach* v. *Godshalk,* 116 Pa. St. 329 [9 Atl. Rep. 444] ; *Olson* v. *Sawyer-Goodman Co.* 110 Wis. 149 [85 N. W. Rep. 640; 53 L. R. A. 648] ; *Hall* v. *Costello,* 48 N. H. 176; *Jones* v. *Building Soc.* L. R. 1 Ch. 173.

Promise made for benefit of third party. Beach, Mod. Contr. Sec. 201; *Dunning* v. *Leavitt,* 85 N. Y. 30 [39 Am. Rep. 617] ; 9 Cyc. 386; 7 Am. & Eng. Enc. Law (2 ed.) 109; *Beveridge* v. *Railway,* 112 N. Y. 1 [19 N. E. Rep. 489; 2 L. R. A. 648] ; *Wheat* v. *Rice,* 97 N. Y. 296; *Wright* v. *Terry,* 23 Fla. 160 [2 So. Rep. 6] ; *Trimble* v. *Strother,* 25 Ohio St. 378.

Plaintiff relied principally on *Insurance Co.* v. *Hull,* 51 Ohio St. 270 [37 N. E. Rep. 1116; 25 L. R. A. 37; 46 Am. St. Rep. 571].

**A. B. Capel** and **Southard & Southard,** for defendant in error:

Upon the question of the legality of the contract in question. *Provident Sav. Life Assur. Soc.* v. *Edmonds,* 95 Tenn. 53 [31 S. W. Rep. 168] ; *Swope* v. *Insurance Co.* 93 Pa. St. 251; *Barrett* v. *Weber,* 6 N. Y. Sup. 434; *Butterly* v. *Blanchard,* 1 Rob. (La.) 340; Chitty, Contracts Secs. 498, 513-15-19-24; *Walbridge* v. *Arnold,* 21 Conn. 423; *Godwin* v. *Crowell,* 56 Ga. 566; *Hatch* v. *Collins,* 34 Hun 314; *School District No. 61* v. *Alderson,* 6 Dak. 145 [41 N. W. Rep. 466] ; *Kellogg* v. *Larkin,* 3 Chand. (Wis.) 133; *Armstrong* v. *Express Co.* 63 Tenn. (4 Baxt.) 376; *Cass Co. Bank* v. *Bricker,* 34 Neb. 516 [52 N. W. Rep. 575; 33 Am. St. Rep. 649] ; *Gregory* v. *Wendell,* 40 Mich. 432; *Hoover* v. *Wood,* 1 Kan. 509; *Bothwell* v. *Brown,* 54 Ill. 234.

Courts will not lend their aid to effect contracts whose consideration is illegal, immoral or such as are against public policy; if the agreement be executory, the court will not aid in its enforcement, and if it be executed the court will not rescind it. *Butterly* v. *Blanchard,* 1 Rob. (La.) 340; Chitty, Contracts Secs. 498, 513-15-24; *Souhegan Bank* v. *Wallace,* 61 N. H. 24; Thompson, Trial Ev. Sec. 615; *Hooker* v. *DePalos,* 28 Ohio St. 251; *Jacobs* v. *Mitchell,* 46 Ohio St. 601 [22 N. E. Rep. 768] ; *McQuade* v. *Rosencrans,* 36 Ohio St. 446;

*Roll* v. *Raguet,* 4 Ohio 400 [22 Am. Dec. 759]; *Moore* v. *Adams,* 8 Ohio 372 [32 Am. Dec. 723]; *Kahn* v. *Walton,* 46 Ohio St. 195 [20 N. E. Rep. 203]; *Cooper* v. *Rowley,* 29 Ohio St. 547; *Williams* v. *Englebrecht,* 37 Ohio St. 383.

Mutuality of agreement to compound felony. *School District No. 61* v. *Alderson,* 6 Dak. 145 [41 N. E. Rep. 466]; Chitty, Contracts 664; *Gregory* v. *Wendell,* 40 Mich. 432; *Bartlett* v. *Smith,* 13 Fed. Rep. 263; *Fosdick* v. *Van Arsdale,* 74 Mich. 302 [41 N. W. Rep. 931]; *Wright* v. *Crabbs,* 78 Ind. 487; *Kottwitz* v. *Alexander,* 34 Tex. 689; *Bond* v. *Perkins,* 51 Tenn. 364; *Puryear* v. *McGavock,* 56 Tenn. 461; *Oxford Iron Co.* v. *Spradley,* 51 Ala. 171; *Robertson* v. *March,* 3 Scam. (Ill.) 198; *Davis & Rankin Bldg. & Mfg. Co.* v. *Barber,* 51 Fed. Rep. 148; *Moss* v. *Wilson,* 40 Cal. 159; *Hoover* v. *Wood,* 1 Kan. 509.

Joint and several contracts. Clark, Contracts 605; Beach, Contracts Sec. 674; *Connecticut & P. Ry.* v. *Bailey,* 24 Vt. 465; Wood, Ry. Law Sec. 57; *Whittlesey* v. *Frantz,* 74 N. Y. 456.

An act not within the corporate powers of the corporation cannot be rendered operative by ratification. But if the act were one which the corporation might lawfully have done or authorized in the first instance, then unauthorized performance in its behalf may be ratified in the same manner and with like effect by an individual. Mechem, Agency Sec. 118.

Notice to corporation. Mechem, Agency 730, 731; *Loomis* v. *Bank,* 12 Dec. Re. 625 (1 Disn. 285); Story, Agency Sec. 140; *Railway* v. *McCoy,* 42 Ohio St. 252; *East Clev. Ry.* v. *Everett,* 10 Circ. Dec. 493 (19 R. 205).

Evidence. *Armstrong* v. *Express Co.* 63 Tenn. (4 Baxt.) 376; *Hatch* v. *Collins,* 34 Hun 314; *School Dist. No. 61* v. *Alderson,* 6 Dak. 145 [41 N. W. Rep. 466]; *Loud* v. *Hamilton,* 45 L. R. A. 400 (Tenn.); Wharton, Contracts Secs. 353, 540; *Wynne* v. *Whisenant,* 37 Ala. 47; *Wells* v. *Thompson,* 50 Ala. 84; *Moog* v. *Strang,* 69 Ala. 98.

**HULL, J.**

This action was brought by the plaintiff to recover $1,160 from the defendant, the Building & Loan Company, which amount the plaintiff claims it owes him. The plaintiff was a member of the defendant company, a corporation of the state of Ohio, and on April 4, 1904, he was, by the books, and in fact, entitled to a credit in the way of deposits and otherwise, in the company. In September following he withdrew, as was his right under the rules of the company, and demanded his money, which was refused, on the ground that he had canceled and re-

Richter v. Building & L. Co.

ceipted for it for a good and valuable consideration, and in that way had received his money. This was denied by Richter; the case went to trial before the court and a jury, and at the conclusion of the testimony a motion was made by each party to direct a verdict in its favor. The finding of the court upon that motion was the same as the finding of a jury would be upon the evidence; and the question is, whether the court was authorized by the evidence in taking the action that was taken—not whether there was a scintilla of evidence either way, but, each party having made this request, the court then stands as a jury. The court sustained the motion of the defendant and directed the jury to return a verdict in its favor. The controversy here is about a certain contract or contracts—papers—which Richter signed. It is claimed by Richter that he receipted for this money—cancelled his claim against the bank—by virtue of an illegal contract, one contrary to law and public policy, therefore he is not bound by it; that it was null and void and of no effect legally, that he had a right to recover his money.

This contract grew out of a defalcation by one Mensing, who had been secretary of the company and was a defaulter to the amount of $30,177, and after it was discovered, Richter, with some nineteen others, entered into an arrangement whereby they were to subscribe and pay enough money to make up this defalcation; this was done and Richter was approached on April 4, by two persons and notified of the condition of affairs in the bank, requested to sign this paper which I have referred to, which he did, and it is claimed that this was in furtherance of an arrangement to compound a felony to save Mensing from a criminal prosecution and from being sent to the penitentiary, and therefore, it was, as I have said, contrary to public policy and void.

On the other hand, defendant in error claims that the purpose was, not to compound a felony; that if there was any such purpose on the part of the parties who signed this paper, including Richter, that the bank itself was not a party to it, therefore not affected by it.

It is claimed by plaintiff in error further, that there were certain errors committed at the trial of the case, and especially in the exclusion of testimony, and it is also claimed that the court erred in directing the verdict as it did.

As I have said, Richter was a stockholder in the bank—a member of the organization, perhaps would be the better term—and he had to his credit in the bank at the time this paper was signed $1,162. He was approached by the two men who requested him to sign this contract, which recites that:

"Whereas, it is represented that H. R. Mensing, as secretary of the

Phoenix Building & Loan Company, is short in his accounts with said
company in approximately the sum of $30,000, and

"Whereas, said H. R. Mensing has agreed to assign and transfer
unto Herman R. Klauser as trustee for the benefit of all the undersigned,
all of his property of every kind and character whatsoever, giving unto
the said Herman R. Klauser full authority to sell the same for the best
price that can be obtained therefor and pay over unto the undersigned
the proceeds of said sale, less the amount of his other indebtedness, *pro
rata* upon the amounts herein subscribed.

"Now therefore, we, the undersigned, in consideration of the con-
veyance by the said H. R. Mensing unto the said Herman R. Klauser,
trustee, his property as above provided, and in order to raise the amount
of his defalcation for the purpose of reimbursing the Phoenix Building
& Loan Company, agree to pay the amount set opposite our names. It
being understood however, the sums hereby subscribed are not to be
paid unless the total amount of said defalcations are raised."

The most of these parties had signed this paper before it was pre-
sented to Richter, and he signed it and enough other stockholders of the
association subscribed sufficient to raise the amount of the defalcation,
and as it seems to us from the evidence, in pursuance of this agreement
which was entered into on April 4, 1904, Richter, on the evening of that
day went to the association building, or bank building as it is called
in the record sometimes, and turned over to the association his book in
which he kept the record of his transactions with the bank and which
showed that it was indebted to him $1,162, and there was written in the
book, which he signed, a cancellation of his account and the writing re-
cited that the book was turned over and surrendered to the association
for the purpose of having it canceled; everything was done in this writ-
ing that could be done to receipt to the bank for this money and con-
stituting a payment of it on the part of the bank to him.

It does not appear that the banking association, as such, had any
knowledge of this transaction as between Richter and the other parties
who signed this paper—none of the officers of the bank said anything
to him about it, did not approach him; did not request him to sign it;
no action was taken by the association providing for anything of this
kind, and so far as the evidence discloses, it seems to have been a volun-
tary act on the part of these parties who signed it, they having the pur-
pose in view, probably, of saving Mensing, the defaulting secretary,
from any criminal prosecution. He was an acquaintance of theirs and
apparently a friend. The writing recites that he is "short" this $30,000.
Another purpose that they had in view was to save the association from

disaster and bankruptcy. They were all stockholders in the association and interested in its property, all except Klauser the trustee, and he also subscribed; and as appears, if this defalcation had not been made up the association would have become bankrupt or gone into the hands of a receiver with the usual results. I say these parties who subscribed were all interested. Klauser himself was not a stockholder. The man who had been acting as trustee and to whom Mensing conveyed his property also subscribed $5,000, and the other subscriptions run in various amounts, enough to make up the whole amount of the defalcation.

In rebuttal, the plaintiff, Richter, sought to show that another paper writing was drawn up about the same time, perhaps the same day, which recited that Mensing was a defaulter and short in his accounts $30,177. This evidence the court excluded, and that is one of the errors complained of. And it recites further:

"And whereas certain persons have loaned unto the said Herman R. Mensing said amount of $30,177, in order to enable him to make good such shortage and to repay and reimburse the said The Phoenix Building & Loan Company to the amount of his said indebtedness thereto, so that the said Herman R. Mensing may escape prosecution therefor.

"And whereas the said Herman R. Mensing has this day, together with his wife, Minnie C. Mensing, executed and delivered unto the said Herman R. Klauser their promissory note for said sum of $30,177 as evidence of their indebtedness unto the said persons who loaned said sum as above mentioned, it is agreed, etc."

This is signed by Klauser and Mensing. It further recites that in order to partially repay the amount of money so loaned and to secure the payment of said indebtedness Mensing agrees to personally convey and deliver unto Klauser as trustee all of his property, both real and personal, and Klauser agrees to take the property and sell it for the best price he can obtain therefor and after taking out of the proceeds the $13,000 that Mensing owes to apply the balance towards the payment of this defalcation or debt to the bank. That is the substance of that writing, making Klauser a trustee for that purpose, and this is the agreement referred to in the other paper which Richter signed.

Now there is no evidence that the bank had anything to do with this paper or that the officers of the bank took any part in it, officially at least, or that the association as such had anything to do with it. There were stockholders of the association present when it was drawn and perhaps some directors; but stockholders or directors, meeting in that unofficial way, would have no power to make a legal contract which

would bind the association and certainly would have no power to make an illegal contract, if there was anything illegal about this contract. This paper creating this trusteeship was excluded by the court. There was no evidence that the association was connected with the drafting of this paper in any way. In order to bind it—in order to make that contract legal so far as they were concerned,—it must appear that the association was a party to it in some way; and this not appearing, we think the court was correct in holding that it was immaterial. What it was that influenced Richter to sign the paper that he did sign, was not material so far as the bank was concerned. Neither was it material so far as the association was concerned, or from a legal point of view, that he signed it with a hope of saving Mensing from a criminal prosecution.

In order to make a contract illegal on the ground that it is compounding a felony, it must appear that there was some kind of an agreement on the part of the party or parties who had been injured by the commission of the crime. The mere hope that it may result in preventing a criminal prosecution, is not sufficient. It is not a crime for friends of a man to raise money to pay up a loss of this kind. Mensing owed this debt to the bank. Although there was a criminal liability, there was a civil liability and there was no law against his friends raising the money, if they could, and making up the defalcation, any more than there was a law against Mensing going to the bank with the hope of paying the amount of his defalcation: if there was no promise on the part of the injured party that they would not prosecute him in consideration of such payment.

After this arrangement had been made, Richter went voluntarily to the building of the association and, pursuant to this contract, canceled the indebtedness of the bank to him. The contract recites that the money is to be paid by these parties subscribing—presumably to the association—the injured party, and as each subscribed the amount that was coming to him from the association, the ordinary way to pay it would be to cancel the amount that the association owed each of them, which would work a payment.

There is another reason why Richter cannot recover this amount back from the bank. The agreement and contract, so far as he is concerned, has been executed. It is well established that courts will not aid in the execution of an illegal contract—if this was an illegal one—but where an illegal contract has been made, or one made for an illegal consideration, and is fully executed, the courts will not assist a party in recovering back what he has paid, but will leave the parties where it

Richter v. Building & L. Co.

finds them. The second paragraph of the syllabus in the case of Hooker v. DePalos, 28 Ohio St. 251, reads as follows:

"The law will not aid a party to such contract, either in its enforcement whilst executory, or in its rescission when executed."

Referring to an illegal contract,—and this seems to be the general law of the land, both in this state and elsewhere, that if parties have entered into an illegal contract and carried it out; have paid the money or given whatever consideration was to be given in such contract,— they will not be aided by the courts in rescinding the contract or in recovering back whatever may have been paid. The courts refuse to recognize such contracts as a basis for execution or for rescission or any recovery. But, as I have suggested, it seems to me that there was nothing illegal or contrary to public policy in the contract or paper writing that Richter signed. There was no promise made to him of an illegal character; he was interested in the bank; he was interested in Mensing, and he, along with these other gentlemen, raised the money to make up this defalcation, raised the money to pay this debt that Mensing owed the association, and it seems to us in any view of it that the fact that it does not appear that the association as such was a party to this arrangement, must be fatal to Richter's claim.

Quite a large amount of testimony was excluded by the court. It was all in the line of showing that this was done for the purpose of preventing a criminal prosecution. Offers to prove were made by counsel showing that this was the object, but there was no offer to prove facts that tended to show that the association was a party to prevent a criminal prosecution or a party to these arrangements which were made. It seems to us that the action of the court of common pleas in directing a verdict was correct and we agree with the court in the opinion pronounced at that time by the trial judge in his charge to the jury. The judgment of the court of common pleas will therefore be affirmed.

**Haynes** and **Parker, JJ.,** concur.